Joseph R. Saveri (SBN 130064)
*jsaveri@lchb.com*
Brendan Glackin (SBN 199643)
*bglackin@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Class Counsel for Direct Purchaser Class Plaintiffs*

[Additional Counsel Listed on Signature Page]

**<u>REDACTED</u>**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(OAKLAND DIVISION)

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>ABBOTT LABORATORIES,<br><br>          Defendant.<br><br>--[caption continues next page]-- | Case No. C 07-5985 CW<br><br>*Related per October 31, 2007 Order to* **Case No. C-04-1511 CW**<br><br>CONSOLIDATED CASE<br><br>**BRIEF OF DIRECT PURCHASER PLAINTIFFS IN OPPOSITION TO ABBOTT'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL <u>PURSUANT TO 28 U.S.C. § 1292(b)</u>**<br><br>Date:     July 10, 2008<br>Time:    2:00 pm<br>Courtroom 2 (4th Floor)<br><br>Hon. Claudia Wilken<br><br>**<u>FILED UNDER SEAL</u>** |

| | |
|---|---|
| SAFEWAY INC.; WALGREEN CO.; THE KROGER CO.; NEW ALBERTSON'S, INC.; AMERICAN SALES COMPANY, INC.; and HEB GROCERY COMPANY, LP, | Case No. C07-5470 (CW) |
| | *Related per October 31, 2007 Order to* **Case No. C-04-1511 CW** |
| Plaintiffs, | **Hon. Claudia Wilken** |
| v. | |
| ABBOTT LABORATORIES, | |
| Defendant. | |

| | |
|---|---|
| RITE AID CORPORATION; RITE AID HDQTRS, CORP.; JCG (PJC) USA, LLC; MAXI DRUG, INC. d/b/a BROOKS PHARMACY; ECKERD CORPORATION; CVS PHARMACY, INC.; and CAREMARK, L.L.C., | Case No. C07-6120 (CW) |
| | *Related per October 31, 2007 Order to* **Case No. C-04-1511 CW** |
| Plaintiffs, | **Hon. Claudia Wilken** |
| v. | |
| ABBOTT LABORATORIES, | |
| Defendant. | |

**FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I.    ABBOTT BEARS THE BURDEN OF DEMONSTRATING EACH OF THE THREE PRONGS OF § 1292(b) .................................................. 4

II.   CERTIFICATION OF ABBOTT'S PROPOSED QUESTION WOULD NOT ADVANCE, MUCH LESS MATERIALLY ADVANCE, THE ULTIMATE TERMINATION OF THE LITIGATION ............................ 6

III.  ABBOTT'S INTERLOCUTORY APPEAL DOES NOT PRESENT A CONTROLLING QUESTION OF LAW .................................................... 10

    A.   Plaintiffs Have Pled a Monopoly Leveraging Claim Under *Image Tech* ................................................................................................ 10

    B.   Plaintiffs Have Alleged Conduct That Is Broader Than Raising Prices ................................................................................................ 11

IV.   THERE IS NOT A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION TO WARRANT INTERLOCUTORY APPEAL ........................ 13

V.    ABBOTT SEEKS CERTIFICATION OF AN ISSUE THAT WAS NOT DECIDED BY THIS COURT ............................................................... 15

CONCLUSION ................................................................................................ 16

- i -

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4
*Abbott Labs. v. Teva Pharms. USA, Inc.,*
   432 F. Supp. 2d 408 (D. Del. 2006) ............................................................ 9

5
*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
   472 U.S. 585 (1985) ................................................................... 11, 13

6

*Best Western Int'l, Inc. v. Govan,*
7    No. CIV 05-3247, 2007 U.S. Dist. LEXIS 39172 (D. Ariz. May 29, 2007) .......................... 1

8
*Brizzee v. Fred Meyer Stores Inc.,*
   No. CV04-1566-ST, 2008 WL 426510 (D. Or. Feb. 13, 2008) ..................................... 5

9
*Broadcom Corp. v. Qualcomm Inc.,*
   501 F.3d 297 (3d Cir. 2007) .............................................................. 12

10
*Broudo v. Dura Pharms., Inc.,*
11   339 F.3d 933 (9th Cir. 2003) ........................................................... 4, 15

12
*California Parents for Equalization of Educ. Materials v. Noonan,*
   No. CIV S-06-532 FCD KJM, 2008 WL 2233569 (E.D. Cal. May 28, 2008) .................. 5, 13

13
*Cascade Health Solutions v. Peacehealth,*
   515 F.3d 883 (9th Cir. 2008) ......................................................... passim

14
*Control Data Corp. v. IBM Corp.,*
   421 F.2d 323 (8th Cir. 1970) ............................................................. 1

15
*Conwood v. U.S. Tobacco,*
16   290 F.3d 768 (6th Cir. 2002) ............................................................. 9

17
*East Portland Imaging Center, P.C. v. Providence Health System-Oregon,*
   2008 WL 2128022 (9th Cir. May 20, 2008) ................................................ 13

18
*Eastman Kodak Co. v. Image Technical Services, Inc.,*
   504 U.S. 451 (1992) ..................................................................... 11

19
*Forsyth v. Humana,*
   114 F.3d 1467 (9th Cir. 1997) ............................................................ 9

20
*Greater Los Angeles Council on Deafness, Inc. v. Zolin,*
21   812 F.2d 1103 (9th Cir. 1987) ........................................................ 4, 15

22
*Hansen v. Schubert,*
   459 F. Supp. 2d 973 (E.D. Cal. 2006) .................................................... 10

23
*Hubbard v. Costco Wholesale Corp.,*
   No. CV 02-6597-GHK, 2004 U.S. Dist. LEXIS 29140 (C.D. Cal. Oct. 5, 2004) .................. 5

24
*Image Technical Services, Inc. v. Eastman Kodak Co.,*
   125 F.3d 1195 (9th Cir. 1997) ..................................................... 3, 10, 11, 12

25
*In re Cement Antitrust Litig.,*
26   673 F.2d 1020 (9th Cir. 1982) ........................................................ 5, 10

27
*In re Folding Carton Antitrust Litig.,*
   75 F.R.D. 727 (N.D. Ill. 1977) ........................................................... 1

28
*In re Rambus, Inc.,*
   2006 WL 2330117 (F.T.C. Aug. 2, 2006) ................................................. 12

# TABLE OF AUTHORITIES
## (continued)

Page

*Jackson v. Placer County,*
No. S-05-79 FCD KJM, 2007 WL 2127528 (E.D. Cal. July 24, 2007)................... 5

*James v. Price Stern Sloan, Inc.,*
283 F.3d 1064 (9th Cir. 2002)......................................................................... 1

*Kern-Tulare Water Dist. v. Bakersfield,*
634 F. Supp. 656 (E.D. Cal.1986)................................................................. 13

*McFarlin v. Conseco Servs., LLC,*
381 F.3d 1251 (11th Cir. 2004)...................................................................... 6

*Meijer, Inc., et al. v. Abbott Labs.,*
No. 07-5702, 2008 U.S. Dist. LEXIS 31816 (N.D. Cal. Apr. 11, 2008) ....... passim

*Metronet Services Corp. v. Qwest Corp.,*
383 F.3d 1124 (9th Cir. 2004)...................................................................... 11

*Notmeyer v. Stryker Corp.,*
No. C 06-04096 SI, 2007 WL 2688462 (N.D. Cal. Sept. 10, 2007)................. 5

*Pool Water Prods. v. Olin,*
258 F.3d 1024 (9th Cir. 2001)........................................................................ 9

*See United States v. Rodriguez-Lara,*
421 F.3d 932 (9th Cir. 2005)..................................................................... 3, 10

*Sierra Foothills Public Utility District v. Clarendon Am. Ins. Co.,*
No. CV F 05-0736, 2006 WL 2085244 (E.D. Cal. July 25, 2006) ................ 13

*Ticketmaster LLC v. Designer Tickets & Tours, Inc.,*
2008 WL 649804 (C.D. Cal. Mar. 10, 2008) .............................................. 13

*U.S. v. Dentsply Int'l, Inc.,*
399 F.3d 181 (3d Cir. 2005).......................................................................... 9

*United States v. Microsoft Corp.,*
253 F.3d 34 (D.C. Cir. 2001)..................................................................... 9, 12

*United States v. Woodbury,*
263 F.2d 784 (9th Cir. 1959)........................................................................ 1

*Valdovinos v. McGrath,*
No. C021-704-CW, 2007 WL 2023505 (N.D. Cal. July 12, 2007) ............ 5, 14

*Verizon Comms, Inc. v. Law Offices of Curtis V. Trinko, LLP,*
540 U.S. 398 (2004)................................................................................... 13

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,*
668 F.2d 1014 (9th Cir. 1981)..................................................................... 8, 9

## STATUTES

28 U.S.C. § 1292(b) ............................................................................... passim

## RULES

Fed. R. Civ. P.
30(b)(6) ................................................................................................... 2, 7

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

**TREATISES**

4

Phillip E. Areeda & Herbert Hovenkamp, III, *Antitrust Law*,
¶ 740d2 (rev. ed. 2007) .................................................................... 8, 9

5

Phillip E. Areeda & Herbert Hovenkamp, III, *Antitrust Law*,
pp. 423-434, 437 (2d ed. 2005) ........................................................... 8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iv -

1

**INTRODUCTION**

2      Plaintiffs Meijer Inc., Meijer Distribution, Inc., Rochester Drug Co-operative, Inc.,

3   and Louisiana Wholesale Drug Co., Inc. ("Direct Purchaser Class Plaintiffs") and plaintiffs in the

4   Safeway and Rite Aid cases (collectively, with Direct Purchaser Class Plaintiffs, "Plaintiffs"),

5   submit this brief in opposition to Abbott's motion for certification of interlocutory appeal

6   pursuant to 28 U.S.C. § 1292(b).

7      Interlocutory orders—such as this Court's order denying Abbott's motions to

8   dismiss—generally are not immediately appealable. *James v. Price Stern Sloan, Inc.*, 283 F.3d

9   1064, 1068 n.6 (9th Cir. 2002). "Section 1292(b) is a departure from the normal rule that only

10  final judgments are appealable, and therefore must be construed narrowly." *Id.* As one district

11  court in this Circuit recently explained:

12           In *United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959), the
             seminal Ninth Circuit case on certification, the Court noted "[t]hat
13           § 1292(b) is to be applied sparingly and only in exceptional
             cases[.]" This view is consistent with the legislative history of
14           section 1292(b) which supports caution in its application. "[I]n
             passing this legislation Congress did not intend that the courts
15           abandon the final judgment doctrine and embrace the principle of
             piecemeal appeals." *Id.* (internal quotation marks and citation
16           omitted). . . . Section 1292(b) certification "is intended to be used
             only in exceptional situations in which allowing an interlocutory
17           appeal would avoid protracted and expensive litigation."

18  *Best Western Int'l, Inc. v. Govan*, No. CIV 05-3247, 2007 U.S. Dist. LEXIS 39172, at *9-11 (D.

19  Ariz. May 29, 2007) (citations and internal quotation marks omitted).

20      "Permission to take an interlocutory appeal should be granted sparingly and with

21  discrimination because there is a serious risk that piecemeal appeals will impede the efficacious

22  administration of justice and unduly prolong the litigation, thereby burdening the parties and the

23  court with unnecessary costs and delay." *Control Data Corp. v. IBM Corp.*, 421 F.2d 323, 325

24  (8th Cir. 1970); *see also In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 738 (N.D. Ill.

25  1977). Abbott offers no compelling reason for this Court to depart from the normal rule and

26  certify this matter for interlocutory appeal.

27      Tellingly, Abbott's moving papers do not argue that this is an "exceptional" or

28  "rare" situation. Simply: it is not. *First*, certification for interlocutory appeal here would not

BRIEF OF DIRECT PURCHASER PLAINTIFFS IN OPP.
TO ABBOTT'S MOT. FOR CERT. OF
INTERLOCUTORY APPEAL; NO. C 07-5985-CW

1  materially advance the ultimate termination of the litigation.  Even if this Court were to certify the

2  question Abbott proposed, *and* even if the Ninth Circuit were to exercise its discretion and hear

3  the interlocutory appeal, *and* even if the Ninth Circuit were to accept Abbott's argument on the

4  merits in its entirety and hold that the test for exclusionary conduct set out in *Cascade* must be

5  strictly and exclusively applied here, ***absolutely nothing would change***.  Direct Purchaser Class

6  Plaintiffs have pled, and would still present evidence, as they currently plan to do, showing that

7  the imputed price of lopinavir is lower than its average variable costs, thereby establishing, *prima*

8  *facie*, that Abbott engaged in anticompetitive conduct even under *Cascade*'s equally efficient

9  competitor test.

10          This *prima facie* demonstration of Abbott's anticompetitive conduct would

11  support the exact same overcharge damages that Plaintiffs currently seek, and this case would

12  proceed in the same manner and on the same schedule upon which it is currently proceeding.  In

13  fact, the only possible effect of granting Abbott's motion would be to distract the parties from

14  litigating the case on the merits, and potentially delay the current schedule while the parties and

15  the Court await the Ninth Circuit's determination—a result directly in conflict with § 1292(b)'s

16  direction to certify questions for interlocutory appeal only if they have the potential to lead to

17  more rapid resolutions of cases.

18          Direct Purchaser Class Plaintiffs have served a Fed. R. Civ. P. 30(b)(6) request on

19  Abbott concerning elements of the *Cascade* equally efficient competitor test.  *See Cascade*

20  *Health Solutions v. Peacehealth*, 515 F.3d 883 (9th Cir. 2008) ("*Cascade*").  Abbott is resisting

21  that request on the grounds that this Court has held that *Cascade* is totally inapplicable to this

22  case.  However, this Court merely held Plaintiffs *need not* satisfy *Cascade*'s equally efficient

23  competitor test.  The Court did not *prohibit* Plaintiffs from using the equally efficient competitor

24  test to demonstrate Abbott's anticompetitive conduct.  Indeed, the Direct Purchaser Class

25  Plaintiffs have alleged that they *can* meet *Cascade*'s equally efficient competitor test, Meijer

26  Compl. ¶ 41, and discovery produced and reviewed to date only strengthens those allegations.

27  Pending completion of their 30(b)(6) discovery requests, which Direct Purchaser Class Plaintiffs

28  hope will be accomplished in short order, Direct Purchaser Class Plaintiffs intend, if they

1   conclude that there are no issues of material fact concerning the *Cascade* test, to file an

2   affirmative motion for partial summary adjudication relating to Abbott's pricing of lopinavir

3   below its average variable cost.  At that time, the Court will have a better opportunity to assess

4   the applicability of *Cascade* as a non-exclusive basis for liability in light of the factual record.

5   Moreover, should Plaintiffs decline to file such a motion, Defendants will have an opportunity to

6   test Plaintiffs' lay and expert evidence at the close of discovery either with a summary judgment

7   motion of their own, or at trial.

8          ***Second***, Abbott's proposed question does not present a "controlling" issue of law.

9   Plaintiffs bring claims grounded on independent Ninth Circuit authority in *Image Technical*

10  *Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1216 (9th Cir. 1997) ("*Image Tech*")—a

11  case that was not, and could not have been, overruled by *Cascade*.  Nowhere in *Cascade* does the

12  Ninth Circuit hold that the equally efficient competitor test is the exclusive basis upon which to

13  measure exclusionary conduct such as Abbott's, and nowhere in its *Cascade* opinion does the

14  Ninth Circuit state that it is overruling its decision in *Image Tech*.  Indeed, the Ninth Circuit panel

15  in *Cascade* did not even have the power to overrule *Image Tech*.  *See United States v. Rodriguez-*

16  *Lara*, 421 F.3d 932, 943 (9th Cir. 2005) (noting that "a three-judge panel may not overrule [Ninth

17  Circuit precedent] absent intervening Supreme Court or *en banc* authority").

18         This Court rightly rejected a mechanical and exclusive application of the equally

19  efficient competitor test here, and instead explained that a monopoly leveraging theory cognizable

20  under *Image Tech*, and the equally efficient competitor test set forth in *Cascade* "hypothetically

21  could apply at the same time" and provide alternative bases upon which Plaintiffs can press their

22  claims.  *Meijer, Inc., et al. v. Abbott Labs.*, No. 07-5702, 2008 U.S. Dist. LEXIS 31816, at *9 n.2

23  (N.D. Cal. Apr. 11, 2008) ("MTD Opinion") (emphasis added).  This Court recognized that

24  *Cascade* and *Image Tech* each provide independent, sufficient bases for liability, and rejected

25  Abbott's attempt to make *Cascade*'s equally efficient competitor test the exclusive means by

26  which Plaintiffs need to prove their case.

27         ***Third***, Abbott has presented no cases demonstrating a "substantial ground for

28  difference of opinion" on the question that it seeks to have certified.  Abbott's motion is premised

1    on its mere disagreement with this Court's order denying Abbott's motion to dismiss.  While

2    Abbott is free to disagree with this Court, it is not entitled to interlocutory appellate review.

3         ***Finally***, Abbott has failed even the most basic task of presenting a question for

4    interlocutory appeal that was actually decided by this Court.  It is inappropriate for the Ninth

5    Circuit to consider the question presented by Abbott because Abbott does not seek appeal of a

6    decision expressly made by this Court.  *See Broudo v. Dura Pharms., Inc.*, 339 F.3d 933, 941 (9th

7    Cir. 2003), *rev'd on other grounds*, 544 U.S. 336 (2005); *Greater Los Angeles Council on*

8    *Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 (9th Cir. 1987).  The question proposed by Abbott

9    for certification—"[w]hether this case warrants an exception to *Cascade*[ ]"—presupposes that

10   this Court created a new exception to *Cascade*.  But this Court did no such thing.  What the Court

11   did do is deny Abbott's motions to dismiss because, if under the facts as alleged, a rigid

12   application of *Cascade* would result in grounds for dismissal, that would warrant an exception to

13   the equally efficient competitor test set forth in *Cascade*.  As this Court explained, that exception

14   is explicitly "*contemplated by*" the Ninth Circuit in *Cascade*.  MTD Opinion at *24 (emphasis

15   added).

16        Abbott's question therefore is not appropriate for certification to the Ninth Circuit

17   for interlocutory appeal.  Abbott is apparently attempting to seek an advisory opinion from the

18   Ninth Circuit whether a new exception to the bright line rule of *Cascade* is appropriate.

19   Plaintiffs, though, are *not* proceeding under a newly created exception to *Cascade* but, instead,

20   *are* proceeding, in part, under *Cascade* as an alternative, non-exclusive basis upon which to press

21   their claim.  Abbott has not even presented a properly formulated question for certification

22   under 1292(b).

23        For all of these reasons, and as discussed more fully below, Plaintiffs respectfully

24   request that this Court deny Abbott's motion.

25   **I.    ABBOTT BEARS THE BURDEN OF DEMONSTRATING EACH OF THE**
26   **THREE PRONGS OF § 1292(b)**

27        Abbott has the burden to satisfy all three prongs of the § 1292(b) test.  "A party

28   seeking permission to file an interlocutory appeal under 28 U.S.C. § 1292(b) must establish three

elements: (1) the matter being appealed involves a controlling question of law, (2) there must be substantial grounds for difference of opinion, and (3) the immediate, interlocutory appeal may materially advance the ultimate termination of the litigation." *Hubbard v. Costco Wholesale Corp.*, No. CV 02-6597-GHK, 2004 U.S. Dist. LEXIS 29140, at *3 (C.D. Cal. Oct. 5, 2004) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)). "The party seeking certification of an interlocutory appeal has the burden to show the presence of these exceptional circumstances." *California Parents for Equalization of Educ. Materials v. Noonan*, No. CIV S-06-532 FCD KJM, 2008 WL 2233569, at *3 (E.D. Cal. May 28, 2008). Where the moving party fails to carry its burden of satisfying each prong, the motion should be denied. *See Hubbard*, 2004 U.S. Dist. LEXIS 29140, at *7 (denying defendant's motion for interlocutory appeal where defendant demonstrated the presence of a controlling question of law but "has not established *all* of the elements required for issuance of a certificate of appealability under § 1292(b)") (emphasis added).

Where, as here, an appellate court's ruling is unlikely to "change the outcome of . . . the case," an interlocutory appeal should not be certified. *Notmeyer v. Stryker Corp.*, No. C 06-04096 SI, 2007 WL 2688462, at *3 (N.D. Cal. Sept. 10, 2007). When, for example, an interlocutory appeal would resolve only certain issues and leave other claims cognizable, it should not be granted. *See Valdovinos v. McGrath*, No. C021-704-CW, 2007 WL 2023505, at *4 (N.D. Cal. July 12, 2007) (noting that an interlocutory appeal will not be given as long as other claims remain); *Brizzee v. Fred Meyer Stores Inc.*, No. CV04-1566-ST, 2008 WL 426510, at *6 (D. Or. Feb. 13, 2008) (stating that parties want their disputes handled efficiently and quickly, and by removing some claims, it would not advance termination, "but simply reshuffle the procedural deck"); *see also Jackson v. Placer County*, No. S-05-79 FCD KJM, 2007 WL 2127528, at *3 (E.D. Cal. July 24, 2007) (holding that a dismissed claim is independent of surviving claims and does not require interlocutory appeal because it would not advance the litigation).

A court should construe the requirements for certification strictly, and grant a motion for certification only when exceptional circumstances warrant such action. *Valdovinos*,

1    2007 U.S. Dist. LEXIS 53172, at *6.  Section 1292(b) is not a vehicle to question the correctness

2    of a district court's ruling or to obtain a second, more favorable opinion.  *McFarlin v. Conseco*

3    *Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004).  As detailed below, because Abbott's motion

4    fails to demonstrate satisfaction of even one of the necessary § 1292(b) prongs—much less all

5    three prongs, as required—and because *any* possible decision from the Ninth Circuit would

6    neither advance nor change the outcome of this case in any material way, Abbott's appeal should

7    not be certified.

8    **II.    CERTIFICATION OF ABBOTT'S PROPOSED QUESTION WOULD NOT**
     **ADVANCE, MUCH LESS MATERIALLY ADVANCE, THE ULTIMATE**
9    **TERMINATION OF THE LITIGATION**

10          Because of the specific facts of this case, Direct Purchaser Class Plaintiffs can and

11   intend to use *Cascade*'s equally efficient competitor test as a non-exclusive means of proving the

12   Section 2 violation, alongside other monopolization theories.  This Court held that Plaintiffs are

13   not *required* to meet the stringent price-based *Cascade* test to prove their Section 2 claim.  MTD

14   Opinion at *12.    However, if Plaintiffs can satisfy the more-stringent-than-necessary *Cascade*

15   analysis, then Plaintiffs have demonstrated a *prima facie* case of exclusionary conduct.

16          Direct Purchaser Class Plaintiffs have pled and believe they can satisfy the stricter

17   equally efficient competitor test by presenting evidence that the average variable costs

18   attributable to the lopinavir component of Kaletra are greater than the imputed price of lopinavir.

19   If Plaintiffs succeed in establishing this fact, then Plaintiffs satisfy the *Cascade* bright-line test

20   and establish a *prima facie* Section 2 violation.

21          Abbott has previously acknowledged that the imputed price of lopinavir is $1.64.[1]

22   Hence, Abbott's pricing would fail the *Cascade* equally efficient competitor test if its average

23   variable cost of producing and marketing lopinavir exceeds $1.64 ($1.64 is less than 9% of the

24   price of Kaletra in December 2003, the date of Abbott's 400% price hike on Norvir; this means

25   that Abbott would need roughly 92% profit margins on lopinavir in order to avoid liability under

26

---

[1] Abbott repeatedly concedes that $1.64 is the imputed price of lopinavir under the *Cascade* analysis. *E.g.*,
27   Abbott Laboratories' Reply Brief in Support of Its Motion to Dismiss, at 6-7 (filed February 21, 2008);
     Supplemental Brief in Support of its Summary Judgment Motion, at 3, filed in No. C 04-1511 CW,
28   Doc. 491-2 (Apr. 25, 2008).

*Cascade*).  All evidence produced by Abbott to date suggests that it does.  Direct Purchaser Class Plaintiffs recently have served additional discovery requests focused exclusively on the factual underpinnings of the *Cascade* equally efficient competitor test.  Shortly after completion of this discovery, Direct Purchaser Class Plaintiffs, if they conclude that there are no issues of material fact concerning the *Cascade* test, intend to file an affirmative motion for partial summary adjudication relating to Abbott's pricing of lopinavir below its average variable cost.[2]

Even with the limited discovery provided to date, Abbott's own documents establish that manufacturing costs *alone* amount to approximately

**REDACTED**

Abbott represented to this Court in support of its motions to dismiss in the direct purchaser cases the following price and cost structure relating to Kaletra:

  1.    The daily dose price of Kaletra in December 2003 was $18.78;

  2.    The price component of 200 mg of Norvir (the amount of Norvir used in a daily dose of Kaletra) in December 2003 was $17.14 per daily dose; and

  3.    The $1.64 differential between the Kaletra and Norvir prices represents the imputed price of lopinavir.

If there was any doubt that Abbott embraced $1.64 as the imputed price for lopinavir, that doubt was removed in its recent statement to the Court:

---

[2] Plaintiffs served a 30(b)(6) notice and Request for Production of documents requesting cost data on Kaletra, the Kaletra components, lopinavir and ritonavir.  Plaintiffs have met and conferred with Abbott on portions of this motion and have reached impasse on production of cost data.  Plaintiffs understand Abbott's position to be that such cost data is irrelevant in discovery because Abbott believes this Court has held that *Cascade* can not apply to this case.  However, the cost data is important and certainly relevant for several reasons including, but not limited to, the average variable cost test under *Cascade* and whether Abbott has obtained, enhanced and/or exercised its monopoly power.  Plaintiffs are in the process of preparing a motion to compel production of such cost data based, *inter alia*, on the argument that *Cascade*'s equally efficient competitor test is a non-exclusive test that Plaintiffs may use to demonstrate Abbott's anticompetitive conduct.

1

> Far from presenting evidence that a "hypothetically equally efficient developer of an equally effective PI would not be able to profit if it introduced that PI to the market at a price of $1.64," (Op at 16), Plaintiffs affirmatively admit that they are aware of no evidence that Abbott's pricing "exclude[s] new, equally effective PIs from competing with lopinavir."

Abbott Labs.' Mot. for Leave to File Supplemental Br. in Supp. of Its Summ. J. Mot. (in SEIU/DOE case) or, in the Alternative, (1) Mot. for Leave to File Recons. Mot., (2) Mot. for Continuance, and (3) Pet. to Certify Interlocutory Appeal under Section 1292(b), at *3.

REDACTED

REDACTED

REDACTED

Abbott may attempt to dispute these cost figures, but such a dispute would highlight the inappropriateness of disrupting the normal progress of this litigation when there is

---

[3] See William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc., 668 F.2d 1014, 1037 (9th Cir. 1981); Phillip E. Areeda & Herbert Hovenkamp, III, *Antitrust Law*, ¶ 740d2 (rev. ed. 2007); Phillip E. Areeda & Herbert Hovenkamp, III, *Antitrust Law*, pp. 423-434, 437 (2d ed. 2005); Singer Decl. at ¶¶ 31-33 and Table 2.

1  substantial doubt that resolution of the issue would have any effect on the outcome of this case.

2  Abbott's argument for avoiding liability under the *Cascade* test appears to hinge in large part on

3  an argument that only manufacturing costs should be considered when calculating average

4  variable costs. However, the inclusion of costs relating to manufacturing, promoting, marketing,

5  selling, delivering, and ongoing research and development in the calculation of average variable

6  costs is well-supported in law and economics.[4] The question of whether the average variable

7  costs include all of the avoidable costs discussed above, or whether they are limited, as Abbott

8  may argue, to just manufacturing costs, has not been presented, much less decided, at this stage of

9  the litigation.[5]

10              Certification would not speed or advance in any manner the ultimate termination

11

12  [4] Under Ninth Circuit law, "fixed production costs of a firm are those costs that do not vary with
    output *and that would remain even if the firm discontinued production.*" *Inglis*, 668 F.2d at 1037

13  (emphasis added). Variable costs, therefore, are those costs that would *not* remain if a firm
    stopped producing a product. Clearly, under the applicable definition, variable costs here would

14  necessarily include such items as: marketing and promotion; shipping; and ongoing clinical trials
    and studies, *i.e.*, all costs that could be avoided if a firm were to cease selling that product. *See*

15  Phillip E. Areeda & Herbert Hovenkamp, III, *Antitrust Law* ¶ 740d2 (rev. ed. 2007) (concluding
    that advertising, promotion and other marketing expenses relate "directly to immediate output"

16  and such costs "almost certainly become one of the incremental costs of predation."). *See also*
    Singer Decl. at ¶ 31.

17

18  [5] Abbott also continues to incorrectly assert that there is no antitrust violation unless Plaintiffs are
    able to demonstrate complete exclusion of rivals from the market. Abbott Motion for Certification

19  of Interlocutory Appeal Pursuant to 28 U.S.C. Section 1292(b) at *5-6. This Court properly
    rejected the Abbott position in the related Doe/SEIU action. It is well-settled that conduct that

20  impairs, but does not completely exclude, a rival can harm competition and violate Section 2. *See*
    *Forsyth v. Humana*, 114 F.3d 1467, 1478 (9th Cir. 1997) (hospital's policy of referring indigent

21  patients to rivals is unlawful if it "increased the operating cost of those competitors"); *Pool Water*
    *Prods. v. Olin*, 258 F.3d 1024, 1034 (9th Cir. 2001); *see also Conwood v. U.S. Tobacco*, 290 F.3d

22  768, 788-790 (6th Cir. 2002). As courts have explained in other scenarios, including, most
    recently, one involving allegations of exclusionary conduct by Abbott itself:

23       To show that conduct has an anticompetitive effect, "it is not necessary that all
         competition be removed from the market. ***The test is not total foreclosure***, but whether

24       the challenged practices bar a substantial number of rivals or severely restrict the
         market's ambit."

25  *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 423 (D. Del. 2006) (quoting *U.S. v.*
    *Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir. 2005) (emphasis added); *see also United States v.*

26  *Microsoft Corp.*, 253 F.3d 34, 64 (D.C. Cir. 2001) ("[Microsoft] argues that, despite the
    restrictions in the OEM license, Netscape is not completely blocked from distributing its product.

27  That claim is insufficient to shield Microsoft from liability for those restrictions because,
    although Microsoft did not bar its rivals from all means of distribution, it did bar them from the

28  cost-efficient ones.").

1    of this case. This case will continue and—regardless of how the Ninth Circuit would rule on the

2    merits of Abbott's motion if this Court were to certify the question and the Ninth Circuit were to

3    accept the interlocutory appeal—Direct Purchaser Class Plaintiffs *will*, in accordance with their

4    pleadings, present evidence showing that Abbott fails the *Cascade* equally efficient competitor

5    test. Because of this, no possible decision from the Ninth Circuit could shorten this case by even

6    one day.

7    **III.    ABBOTT'S INTERLOCUTORY APPEAL DOES NOT PRESENT A**
     **CONTROLLING QUESTION OF LAW**

8

9         Abbott's question for appeal does not present a "controlling issue of law" as

10    required by 28 U.S.C. § 1292(b). An issue is "controlling" if "'resolution of the issue on appeal

11    could materially affect the outcome of litigation in the district court.'" *Hansen v. Schubert*,

12    459 F. Supp. 2d 973, 1000 (E.D. Cal. 2006) (quoting *In re Cement Antitrust Litigation*, 673 F.2d

13    1020, 1026 (9th Cir. 1982)). Here, resolving the issue of whether *Cascade*'s pricing test applies

14    to Abbott's massive price increase is not a controlling issue of law because its resolution would

15    not materially affect the outcome of this litigation. Among other theories, the monopoly

16    leveraging theory found cognizable in *Image Tech* remains an independent mechanism by which

17    Plaintiffs can prove anticompetitive conduct, and that alternative theory would not be affected by

18    any potential ruling on the quest that Abbott seeks to have certified. Abbott's question, therefore,

19    cannot be considered "controlling."

20         **A.    Plaintiffs Have Pled a Monopoly Leveraging Claim Under *Image Tech***

21         As this Court has previously held, Plaintiffs have adequately alleged a claim of

22    monopoly leveraging under *Image Tech,* which held that "a monopolist who acquires a dominant

23    position in one market through patents or copyrights may violate § 2 if the monopolist exploits

24    that dominant position to enhance a monopoly in another market." *Image Tech*, 125 F.3d at 1216.

25    As mentioned above, *Cascade* did not overrule *Image Tech*—indeed, it could not have done so,

26    *Rodriguez-Lara*, 421 F.3d at 943—and therefore Plaintiffs' monopoly-leveraging claim based on

27    *Image Tech* is independent of whether the imputed price of lopinavir is above its average variable

28    cost.

Contrary to Abbott's contention—which has been repeatedly rejected by this Court—not all monopoly-leveraging cases necessarily involve an outright refusal to deal, and not all cases that challenge a defendant's pricing actions necessarily involve allegations of below-cost pricing. Legal rules "that rest on formalistic distinctions rather than actual market realities are generally disfavored in antitrust law." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 466-67 (1992). As a matter of actual market realities, a price increase can be tantamount to a refusal to deal, and the Supreme Court has so recognized. In *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), the defendant ski-resort operator considered discontinuing altogether a combined all-mountain ticket that included the plaintiff's resort, but instead decided to offer the plaintiff the combined ticket on extremely unfavorable terms.[6] According to the defendant, it offered the plaintiff "an offer that [it] could not accept." *Id.* at 592. The Supreme Court ruled that this conduct impaired the plaintiff's ability to compete and, in the absence of a valid business justification, violated section 2 of the Sherman Act. *Id.* at 607-611. Other courts have similarly held that exclusionary price increases can be viewed as tantamount to a refusal to deal. *See, e.g., Metronet Services Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132 (9th Cir. 2004) ("An offer to deal with a competitor only on unreasonable terms and conditions can amount to a practical refusal to deal.").

### B.     Plaintiffs Have Alleged Conduct That Is Broader Than Raising Prices

The applicability of *Cascade* is not "controlling" because Plaintiffs have alleged conduct that goes well beyond monopoly leveraging under *Image Tech* and is also unlawful under a number of independent legal theories. Claims based on these theories survive whether or not *Cascade* applies.

Plaintiffs have alleged that: (1) Abbott facilitated the use of Norvir as a booster

---

[6] While the unfavorable terms offered in *Aspen Skiing* related to the split of revenues between the two resort operators, the defendant could have accomplished the same result by raising the price of its own tickets 400% when purchased as part of the 4-area package, while leaving the price of its tickets unchanged when purchased in the ordinary way. There is no reason to believe that the Supreme Court would have analyzed this conduct any differently than it analyzed the defendant's actual conduct.

1   and caused its competitors to rely on the continued availability of Norvir, both through a prior

2   course of conduct and through formal license agreements with Abbott's competitors; (2) Abbott

3   induced its competitors to rely on the continued availability of Norvir; (3) in reliance on the

4   continued availability of Norvir, GlaxoSmithKline and other Abbott competitors delayed

5   developing, testing and/or launching other potential boosted protease inhibitors that could be

6   effective when boosted with substantially less Norvir than current boosted PIs or that could be

7   used with another boosting drug entirely; (4) Abbott's anticompetitive conduct has unlawfully

8   caused the boosted market to standardize on Norvir for boosting purposes and has significantly

9   retarded the development of alternatives to Norvir, thereby enabling Abbott to sell Norvir at

10  artificially inflated prices; (5) at the very same time that Abbott was planning to limit Norvir's

11  availability (either by discontinuing it or by raising its price), Abbott was approaching GSK and

12  other competitors to induce them to take licenses from Abbott that permitted them to market and

13  promote their own PIs for use in conjunction with Norvir; (6) Abbott never disclosed to GSK and

14  other licensees that Abbott might either remove Norvir from the market or raise its price in an

15  amount that would make it effectively unavailable to many patients; (7) when GSK entered into

16  its Norvir license agreement with Abbott in December 2002, GSK relied on Abbott's good faith

17  in not materially deviating from its prior course of conduct with regard to the sale and pricing of

18  Norvir; and (8) upon entering into the license agreement with GSK, Abbott was bound to act in

19  good faith to ensure that Norvir remained available for co-administration with GSK's PIs, because

20  otherwise the license agreement would be illusory—GSK would have paid Abbott for nothing.

21  *See* Rite Aid Complaint ¶¶ 21, 42; Meijer Consolidated Amended Complaint ¶¶ 25, 34-38;

22  GSK Complaint ¶¶ 16-20, 23.

23          These allegations state a claim under section 2 that is broader than, and

24  independent of, Plaintiffs' monopoly-leveraging claim under *Image Tech*. Abbott misled its

25  competitors into developing PI regimens based on the use of Norvir as a booster, and then

26  drastically curtailed Norvir's availability by refusing to offer it to patients on reasonable terms.

27  Such conduct by a monopolist can violate section 2. *See Broadcom Corp. v. Qualcomm Inc.*,

28  501 F.3d 297 (3d Cir. 2007); *United States v. Microsoft Corp.*, 253 F.3d 34, 76-77 (D.C. Cir.

1  2001); *In re Rambus, Inc.*, 2006 WL 2330117 (F.T.C. Aug. 2, 2006).    Moreover, Abbott's

2  decision to abandon a prior and presumably profitable course of conduct for the purpose of

3  restricting competition over the long term renders Abbott's conduct subject to challenge under

4  *Aspen Skiing. See Verizon Comms, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398,

5  409 (2004); *Aspen Skiing*, 472 U.S. at 605-11.

6          Each of these independent claims would survive regardless of any possible ruling

7  from the Ninth Circuit on the question that Abbott seeks to have certified.

8  **IV.    THERE IS NOT A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION**

9          **TO WARRANT INTERLOCUTORY APPEAL**

10          Abbott spends more than half of its brief arguing why this Court's decision is

11  incorrect, but cites no case requiring a strict and exclusive application of *Cascade*'s pricing test

12  when there are alternative bases to uphold the claims.[7]  Abbott has not demonstrated a substantial

13  ground for disagreement with this Court's decision.   The Court was correct that Plaintiffs need

14  not satisfy the mechanical test embodied in *Cascade* because, *inter alia*, there are alternative legal

15  bases for these claims.   Moreover, this case deals with a price hike, not price cutting, thereby

16  obviating the Ninth Circuit's concern in *Cascade* about discouraging price cutting behavior that

17  benefits consumers.

18          Abbott's mere disagreement with this Court's decision is insufficient to justify an

19  interlocutory appeal.  "A party's strong disagreement with the court's ruling is not sufficient for

20  there to be a 'substantial ground for difference;' the proponent of an appeal must make some

21  greater showing."   *California Parents*, 2008 WL 2233569, at *3 (citing *Kern-Tulare Water*

22  *Dist. v. Bakersfield*, 634 F. Supp. 656, 667 (E.D. Cal.1986)); *see also Sierra Foothills Public*

23  *Utility District v. Clarendon Am. Ins. Co.*, No. CV F 05-0736, 2006 WL 2085244, at *5 (E.D.

24  Cal. July 25, 2006) (holding that defendant's "bald assertion that this court's interpretation of

25
26
27
28

[7] Plaintiffs could find no cases that would support Abbott's position.   Neither of the published cases that Plaintiffs found that cite *Cascade* contained a price hike.   *See East Portland Imaging Center, P.C. v. Providence Health System-Oregon*, 2008 WL 2128022, at *1 (9th Cir. May 20, 2008); *Ticketmaster LLC v. Designer Tickets & Tours, Inc.*, 2008 WL 649804, at *2 (C.D. Cal. Mar. 10, 2008).

1   [the] *Gunderson* [case] is incorrect does not establish that 'there is substantial ground for

2   difference of opinion' as to the controlling law on this issue"). Rather, a "difference of opinion"

3   is established where there are either "conflicting decisions on this issue in other circuits, or that

4   this Court's order conflicts with decisions of other courts." *Valdovinos*, 2007 U.S. Dist. LEXIS

5   53172, at *3 (holding a dearth of case law does not amount to a substantial disagreement).

6       Moreover, Abbott cannot even point to a theoretical disagreement with the

7   rationale of this Court's MTD Opinion. As this Court explained, the equally efficient competitor

8   test proposed in *Cascade* is wanting in situations characterized by high initial research and

9   development and other fixed costs, followed by relatively low costs of production:

10          If the *Cascade* rule were applied in this context, it would stifle
            competition; even a competitor who could produce an equally-
11          effective drug for only $0.01 per pill would be excluded from the
            market. Thus, as applied here, the *Cascade* rule does not achieve
12          its stated goal of prohibiting pricing that results in the exclusion of
            equally efficient competitors. . . . More fundamentally, using
13          average variable cost as a gauge of anticompetitive pricing leads to
            an exclusive concern with promoting manufacturing efficiency.
14          But such a concern is not relevant here, where the goal is to prevent
            pricing that would exclude new, equally effective PIs from
15          competing with lopinavir, provided those PIs can be developed and
            introduced at least as efficiently as lopinavir. The present cases are
16          not concerned with the potential exclusion of equally efficient
            manufacturers of lopinavir. Yet the *Cascade* rule is equipped only
17          to address this latter scenario.

18   MTD Opinion at *20-23. Consistent with the holding of *Cascade*, this Court recognized that

19   strict and exclusive application of the equally efficient competitor test in this scenario could allow

20   the exclusion of a nascent competitor, before it has had a chance to gain economies of scale and

21   scope, and that would harm competition. Of course, if the this test can be met even though it

22   creates an unreasonably large "safe harbor" for the monopolist under the facts of this case, it

23   would mean that the conduct is most certainly anticompetitive.

24       Because Abbott has failed to offer any cases that apply *Cascade*'s test to a price

25   hike scenario or to a scenario involving high development costs and low manufacturing costs, and

26   because Abbott cannot offer even theoretical justification for its difference of opinion, it fails to

27   carry its burden to demonstrate that there is a "substantial ground for difference of opinion."

28   Abbott's mere disagreement with this Court is not sufficient to justify certification of an

1    interlocutory appeal.

2    **V.    ABBOTT SEEKS CERTIFICATION OF AN ISSUE THAT WAS NOT DECIDED
3    BY THIS COURT**

4    Abbott's motion should be denied because it seeks certification of an issue not

5    decided by this Court.  Abbott asks this Court to certify the following question:  "Whether this

6    case warrants an exception to the Ninth Circuit's decision in *Cascade*[.]"  Abbott Laboratories'

7    Motion for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. Section 1292(b), at *1.

8    Abbott appears to be seeking an advisory opinion in the guise of a 1292(b)

9    petition, by framing an issue that was not presented nor decided by this Court.  This effort should

10   not be countenanced.    The Ninth Circuit has made it clear that it is "improper" and

11   "inappropriate" to decide an issue on appeal when the district court has not addressed the issue.

12   *See Zolin*, 812 F. 2d at 1107 (declining to address a question of statutory construction that

13   appellants urged the Ninth Circuit to consider when the district court had not addressed the issue,

14   noting that such a review would be "inappropriate"); *see also Broudo*, 339 F. 3d at 941 (declining

15   to affirm a district court's judgment based on issues not decided by the district court, noting that,

16   "[o]rdinarily, we will not decide an issue that was not addressed by the district court").

17   This Court did not hold that this case warrants a new exception to *Cascade*.

18   Rather, this Court held that "the present cases fall within the exception contemplated by *Cascade*,

19   and thus Plaintiffs need not allege or show that the imputed price of the lopinavir portion of

20   Kaletra is less than Abbott's average variable cost of producing it."   MTD Opinion at *24

21   (emphasis added).  This Court explained that it would not embrace a mechanical application of

22   the *Cascade* equally efficient competitor test if such application would defeat the underlying

23   purpose and policy of *Cascade*.  *Id.* at *13 (noting that even if "these cases fall within the general

24   purview of *Cascade*, it does not follow that the Court must mechanically apply the *Cascade* rule

25   regardless of its effect under the circumstances").

26   This holding is not a rejection of *Cascade* nor does it present a new "exception" to

27   *Cascade*.  As this Court explained, the decision to not require Plaintiffs to proceed exclusively

28   under the *Cascade* equally-efficient-competitor framework is an "exception contemplated by

768119.2                                         - 15 -

1  *Cascade*." MTD Opinion at *24 (emphasis added). This Court's rulings were fact-dependent

2  (i.e., the facts of this case as pled do not require application only of *Cascade*'s equally efficient

3  competitor test) and simply rejected Abbott's interpretation of the exclusivity of *Cascade* as the

4  only applicable legal doctrine. For this reason, too, Abbott's question should not be certified.

5  **CONCLUSION**

6  For the above reasons, Plaintiffs respectfully request that this Court deny Abbott's

7  motion for certification of an interlocutory appeal.

8  Date: June 19, 2008         By: */s/ Joseph R. Saveri*

9  
10  Joseph R. Saveri (SBN 130064)
     jsaveri@lchb.com
     Brendan Glackin (SBN 199643)
11  bglackin@lchb.com
     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
12  Embarcadero Center West
     275 Battery Street, 30th Floor
13  San Francisco, CA 94111-3339
     Telephone: (415) 956-1000
14  Facsimile: (415) 956-1008

15  *Class Counsel for Direct Purchaser Class Plaintiffs*

16  Linda P. Nussbaum, Pro Hac Vice
     lnussbaum@kaplanfox.com
17  John D. Radice, Pro Hac Vice
     jradice@kaplanfox.com
18  KAPLAN FOX & KILSHEIMER, LLP
     850 Third Avenue, 14th Floor
19  New York, NY 10022
     Telephone: (212) 687-1980
20  Facsimile: (212) 687-7714

21  Daniel Berger
     danberger@bm.net
22  Eric L. Cramer, Pro Hac Vice
     ecramer@bm.net
23  Daniel C. Simons
     dsimons@bm.net
24  BERGER & MONTAGUE, P.C.
     1622 Locust Street
25  Philadelphia, PA 19103
     Telephone: (215) 875 3000
26  Facsimile: (215) 875 4604

27  
28

Bruce E. Gerstein, Pro Hac Vice
bgerstein@garwingerstein.com
Noah H. Silverman, Pro Hac Vice
nsilverman@garwingerstein.com
GARWIN GERSTEIN & FISHER, LLP
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620

*Co-Lead Counsel for Direct Purchaser Class Plaintiffs*

David P. Smith, Pro Hac Vice
dpsmith@psfllp.com
W. Ross Foote, Pro Hac Vice
rfoote@psfllp.com
PERCY SMITH & FOOTE, LLP
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Telephone: (318) 445 4480
Facsimile: (318) 487 1741

John Gregory Odom, Pro Hac Vice
greg@odrlaw.com
Stuart E. Des Roches, Pro Hac Vice
stuart@odrlaw.com
John Alden Meade, Pro Hac Vice
jmeade@odrlaw.com
ODOM & DES ROCHES, LLP
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Telephone: (504) 522 0077
Facsimile: (504) 522 0078

*Executive Committee for Direct Purchaser Class Plaintiffs*

Andrew E. Aubertine
aa@adr-portland.com
AUBERTINE DRAPER ROSE, LLP
1211 S.W. Sixth Avenue
Portland, OR 87204
Telephone: (503) 221 4570
Facsimile: (503) 221 4590

Joshua P. Davis (State Bar No. 193254)
davisj@usfca.edu
LAW OFFICES OF JOSHUA P. DAVIS
437A Valley Street
San Francisco, CA 94131
Telephone: (415) 422 6223

1            Joseph M. Vanek, Pro Hac Vice
            jvanek@vaneklaw.com
2            David P. Germaine, Pro Hac Vice
            dgermaine@vaneklaw.com
3            VANEK, VICKERS & MASINI, P.C.
            111 South Wacker Drive, Suite 4050
4            Chicago, IL 60606
            Telephone: (312) 224 1500
5            Facsimile: (312) 224 1510

6            Charles M. Kagay (SBN 073377)
            cmk@slksf.com
7            SPIEGEL, LIAO & KAGAY
            388 Market Street, Suite 900
8            San Francisco, CA 94111
            Telephone: (415) 956 5959
9            Facsimile: (415) 362 1431

10           Tucker Ronzetti, Pro Hac Vice
            tr@kttlaw.com
11           Adam Moskowitz, Pro Hac Vice
            amm@kttlaw.com
12           KOZYAK TROPIN & THROCKMORTON
            2800 Wachovia Financial Center
13           200 South Biscayne Boulevard
            Miami, FL 33131 2335
14           Telephone: (305) 372 1800
            Facsimile: (305) 372 3508

15

16           Paul E. Slater, Pro Hac Vice
            pes@sperling-law.com
17           SPERLING & SLATER
            55 West Monroe Street, Suite 3200
18           Chicago, IL 60603
            Telephone: (312) 641 3200
19           Facsimile: (312) 641 6492

20           *Other Class Counsel*

21           Scott Eliot Perwin (Pro Hac Vice)
            sperwin@kennynachwalter.com
22           Lauren C. Ravkind
            KENNY NACHWALTER, PA
23           One Congress Plaza
            111 Congress Avenue, Suite 1060
24           Austin, TX 78701
            Telephone: (512) 480-802

25           *Attorneys for Plaintiffs Safeway Inc.; Walgreen Co.; The Kroger Co.;*
26           *New Albertson's, Inc.; American Sales Company, Inc.; and HEB*
            *Grocery Company, LP*

27

28

1

Steve D. Shadowen (Pro Hac Vice)
sshadowen@hangley.com

2

Monica L. Rebuck (Pro Hac Vice)
mrebuck@hangley.com

3

HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700

4

Harrisburg, PA 17101-1701
Telephone: (717) 364-1007

5

Facsimile: (717) 362-1020

6

*Attorneys for Plaintiffs Rite Aid Corporation; Rite Aid HDQTRS,
Corp,; JCG (PJC) USA, LLC; Maxi Drug, Inc. d/b/a Brooks*

7

*Pharmacy; Eckerd Corporation; CVS Pharmacy, Inc.; and Caremark,
L.L.C.*

8

9

          /s/ Barbara Lynne Harris Chiang

10

William Francis Murphy

11

wfm@dillinghammurphy.com
Barbara Lynne Harris Chiang

12

bhc@dillinghammurphy.com
Edward Eldon Hartley

13

eeh@dillinghammurphy.com
DILLINGHAM & MURPHY, LLP

14

225 Bush Street, Sixth Floor
San Francisco, CA 94104-4207

15

Telephone: (415) 397-2700
Facsimile: (415) 397-3300

16

*Local Counsel for Safeway Inc., et al., and Rite Aid Corp., et al.*

17

18

     Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of
this document has been obtained from Joseph Saveri.

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# FILED UNDER SEAL